**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 25, 2022

Daniel M. Silver, Esquire
McCarter & English, LLP
405 North King Street, 8th Floor
Wilmington, Delaware 19801

John G. Harris, Esquire
Berger Harris LLP
1105 North Market Street, Suite 1100
Wilmington, Delaware 19801

RE: ***Qlarant, Inc. v. IP Commercialization Labs, LLC, et al.***,
Civil Action No. 2021-0574-MTZ

Dear Counsel:

This case represents one part of a multijurisdictional dispute over a December 2019 asset purchase. The buyer and the target memorialized that transaction through an asset purchase agreement, signed by two individuals who claimed to be the target's only stockholders. While the parties negotiated the transaction, another entity also claimed to be a target stockholder. The purported stockholder filed suit in Maryland state court, challenging the transaction and asserting derivative claims as a target stockholder. In response, the buyer sued here, seeking declaratory judgments that the purported stockholder is not a stockholder and that the transaction was validly consummated under the asset purchase agreement.

The defendants in this action, including the purported stockholder, the target, and the target's two undisputed stockholders, moved to dismiss the buyer's

complaint under Court of Chancery Rule 12(b)(1).  I conclude the buyer's proposed declaratory judgments would, if granted, give it an adequate remedy at law.  And so, this court of equity lacks subject matter jurisdiction and the buyer must seek those declaratory judgments in a court of law.  For the reasons that follow, the case is dismissed, and the buyer may transfer the matter to Superior Court under 10 *Del. C.* § 1902 within sixty days.  If the buyer elects to transfer, the remaining issues presented by the fully-briefed motion to dismiss should be transferred as well, so a court of competent jurisdiction can pass on their merits.

## I.      BACKGROUND[1]

On December 31, 2019, plaintiff Qlarant, Inc. ("Qlarant") purchased assets from defendant StudioCodeworks, Inc. ("Studio") and several of its affiliates (the "Transaction").[2]  The Transaction was memorialized in an asset purchase agreement (the "APA").[3]  While the parties were negotiating the Transaction, defendant IP Commercialization Labs, LLC ("IPCL") claimed it held an interest in Studio.[4]  The APA represented that Studio's only shareholders were defendants William Mapp

---

[1] Because I conclude that the Court lacks subject matter jurisdiction over this dispute, I limit my discussion of the facts to only those necessary to resolve that issue.

[2] Docket Item ("D.I.") 1 ¶ 1 [hereinafter "Compl."].

[3] *Id.* ¶ 1.

[4] *Id.* ¶ 10.

and Damon Hunt.[5]  Mapp and Hunt signed the APA, authorizing the Transaction as Studio's only stockholders.[6]

On February 14, 2020, IPCL and its affiliates filed an action challenging the Transaction against Studio, its affiliates, Mapp, and Hunt in the Circuit Court of Maryland for Prince George's County (the "Maryland Action").[7]  Qlarant, IPCL, and Studio are all Maryland entities, and Mapp and Hunt live in Maryland.[8]  In the Maryland Action, IPCL alleges breach of fiduciary duty, breach of contract, tort, and Maryland statutory fraud claims.[9]  IPCL alleges it owns a twenty percent interest in Studio, and asserts some claims derivatively on Studio's behalf.[10]  IPCL's most recent Maryland complaint, dated June 25, 2021, added Qlarant as a defendant.[11]

On July 2, Qlarant came to this Court and filed its Verified Complaint for Declaratory Relief (the "Complaint") against IPCL, Studio, Mapp, and Hunt

---

[5] *Id.* ¶ 9.  I accept Qlarant's descriptions of the APA as true, though I cannot verify them because the APA is not an exhibit to its complaint.

[6] *Id.* ¶ 8.

[7] *Id.* ¶ 16; D.I.13, Ex. C [hereinafter "Maryland SAC"].

[8] Compl. ¶¶ 2–6.

[9] *See generally* Maryland SAC ¶¶ 175–338.

[10] *Id.* ¶¶ 2, 50–51; *see id.* Ct. XXIII.

[11] *See* Maryland SAC at 52.

(together, "Defendants").[12]   Qlarant seeks to confirm its view that IPCL is not a Studio stockholder.  Count I seeks a declaration that "IPCL was not a [Studio] shareholder at the time of the APA's execution."[13]  Count II seeks a declaration that "the transactions consummated pursuant to the APA were validly consummated."[14] The Complaint also prays for the following relief:  "[p]ermanently enjoin IPCL from asserting it held stock or any other interest in [Studio] at the time the APA was executed and the transaction contemplated therein was consummated."[15]

Defendants moved to dismiss (the "Motion") on September 2.[16]  The Motion asserts several grounds for dismissal, including want of subject matter jurisdiction under Rule 12(b)(1), want of personal jurisdiction under Rule 12(b)(2), and improper venue under Rule 12(b)(3).[17]  I address subject matter jurisdiction first, as I can only substantively review the pleadings if I have jurisdiction to do so.[18]  I conclude this matter must be dismissed for lack of subject matter jurisdiction.

---

[12] *See generally* Compl.

[13] *Id.* at 8; *see also id.* ¶¶ 19–24.

[14] *Id.* at 8; *see also id.* ¶¶ 25–29.

[15] *Id.* at 8.

[16] D.I. 9; *see also* D.I. 13.

[17] *See* D.I. 13 at 10, 19, 22.

[18] *See K&K Screw Prods., L.L.C. v. Emerick Cap. Invs., Inc.*, 2011 WL 3505354, at *6 (Del. Ch. Aug. 9, 2011) ("Because the issue of subject matter jurisdiction is a potentially

## II.    ANALYSIS

"When considering a motion to dismiss under Court of Chancery Rule 12(b)(1), the Court's first task, when appropriate, is to assess whether the fundamental predicates to subject matter jurisdiction exist."[19]  "The Court then turns its focus to the 'nature of the wrong alleged' to determine whether Chancery's limited jurisdiction has been invoked."[20]   "The plaintiff 'bears the burden of establishing this Court's jurisdiction,' and when determining whether that burden has been met, the Court may consider the pleadings and matters 'extrinsic to the pleadings.'"[21]

"The Court of Chancery is proudly a court of limited jurisdiction."[22] "Equitable jurisdiction is a predicate issue for every matter in this court of limited

___

dispositive threshold issue, I consider first whether the Complaint pleads a justiciable case or controversy." (footnote omitted) (citing *Gen. Elec. Co. v. Star Techs., Inc.*, 1996 WL 377028, at *1 (Del. Ch. July 1, 1996))).

[19] *Hall v. Coupe*, 2016 WL 3094406, at *2 (Del. Ch. May 25, 2016).

[20] *Id.* (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)).

[21] *Id.* (quoting *Pitts v. City of Wilm.*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009)); *see Zebroski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at *3 (Del. Ch. Apr. 30, 2014) (noting that "when a challenge to subject matter jurisdiction is directed to the face of a complaint, the court accepts the plaintiff's allegations of fact." (alterations and internal quotation marks removed) (quoting *Diebold Comput. Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 590 (Del. 1970))).

[22] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019); *see also Pike Creek Recreational Servs., LLC v. New Castle Cty.*, 238 A.3d 208, 212 (Del. Super.

jurisdiction."[23] "The Court of Chancery can exercise subject matter jurisdiction only when a case falls into one of three buckets."[24] Those buckets contain cases in which (i) "a plaintiff states an equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate remedy at law," and (iii) "jurisdiction exists by statute."[25] Qlarant seeks to invoke this Court's limited jurisdiction through the second bucket, requesting equitable relief in the form of an order enjoining IPCL from asserting it owns an interest in Studio.[26]

---

2020) ("Delaware proudly guards the historic and important distinction between legal and equitable jurisdiction." (internal quotation marks omitted) (quoting *Weston Invs., Inc. v. Domtar Indus., Inc.*, 2002 WL 31011141, at *1 (Del. Super. Sept. 4, 2002))).

[23] *Preston Hollow Cap., LLC v. Nuveen, LLC*, 2019 WL 3801471, at *4 (Del. Ch. Aug. 13, 2019) (citing *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376 (Del. Ch. July 31, 2019)).

[24] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018) (citing *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004)).

[25] *Id.*

[26] *See* Compl. ¶¶ 1, 7; D.I. 14 at 16–17. Qlarant's requests for declaratory judgments do not themselves confer subject matter jurisdiction, as "[i]t is well settled that the Declaratory Judgment Act does not independently confer jurisdiction on this court." *Reeder v. Wagner*, 2007 WL 3301026, at *1 (Del. Ch. Nov. 1, 2007); *see also Diebold*, 267 A.2d at 591 (stating this Court "has jurisdiction in a declaratory judgment action if there is any underlying basis for equity jurisdiction measured by traditional standards"). Qlarant has not argued that its dispute over stock ownership in Studio, a Maryland corporation, states an equitable claim. Nor has it specifically sought an anti-suit injunction regarding the Maryland Action.

Equitable relief is unavailable, and so cannot anchor subject matter jurisdiction, where a "sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."[27] "The question is whether the remedy available at law will afford the plaintiff full, fair[,] and complete relief."[28] In evaluating whether an adequate remedy at law exists, the Court looks beyond the relief stated in the complaint and focuses instead on "what relief is actually sought."[29] In other words, "[t]his jurisdictional inquiry is a serious one involving a

---

[27] 10 *Del. C.* § 342.

[28] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5 (quoting *Hughes Tool Co. v. Fawcett Publ'ns, Inc.*, 315 A.2d 577, 579 (Del. 1974) (*Hughes II*)); *see also J.W. Childs Equity P'rs, L.P. v. Paragon Steakhouse Rests., Inc.*, 1998 WL 812405, at *4 (Del. Ch. Nov. 6, 1998) ("[W]here a remedy provided by a law court of the state would be sufficient, that is, complete, practical and efficient, this Court is without jurisdiction." (internal quotation marks omitted) (quoting *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991)).

[29] *Rapposelli v. Elder*, 1977 WL 23821, at *1 (Del. Ch. Nov. 8, 1977); *see also Levinson v. Cont'l Ins. Servs., Inc.*, 1991 WL 50145, at *2 (Del. Ch. Apr. 4, 1991) ("This Court must make a realistic assessment of the nature of an alleged wrong and the relief available to determine if equity jurisdiction exists." (citing *Hughes Tool Co. v. Fawcett Publ'ns, Inc.* (*Hughes I*), 297 A.2d 428 (Del. Ch. 1972), *rev'd on other grounds*, *Hughes II*, 315 A.2d at 577)); *Gladney v. City of Wilm.*, 2011 WL 6016048, at *4 (Del. Ch. Nov. 30, 2011) ("It is the practice of this Court in determining its jurisdiction, to go behind the facade of prayers to determine the true reason for which the plaintiff has brought suit." (alterations and internal quotation marks omitted) (quoting *Int'l Bus. Machs.*, 602 A.2d at 78)); *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) ("The fact that a complaint contains a prayer for an equitable remedy, without more, does not conclude the jurisdictional analysis. In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing

close examination of the plaintiff's claims and desired relief, not a perfunctory verification of the plaintiff's 'incantation of magic words' sounding in equity."[30] As Chancellor Allen put it:

> Neither the artful use nor the wholesale invocation of familiar chancery terms in a complaint will itself excuse the court . . . from a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate.  If a realistic evaluation leads to the conclusion that an adequate legal remedy is available this court, in conformity with the command of [10 *Del. C.* § 342] will not accept jurisdiction over the matter.[31]

This practical assessment is more focused when considering a request for an injunction to enforce a declaratory judgment, like the one Qlarant seeks.  Qlarant anchors equitable jurisdiction exclusively on its single request for injunctive relief: an order "[p]ermanently enjoin[ing] IPCL from asserting it held stock or any other interest in [Studio] at the time the APA was executed and the transaction

---

his or her claim." (footnote omitted) (citing *Hughes I*, 297 A.2d at 428, and *Diebold*, 267 A.2d at 586)).

[30] *Savage v. Savage*, 920 A.2d 403, 408 (Del. Ch. 2006) (quoting *McMahon*, 532 A.2d at 603); *see Christiana Town Ctr., LLC v. New Castle Ctr.*, 2003 WL 21314499, at *3 (Del. Ch. June 6, 2003) ("In this regard, the Court of Chancery will not exercise subject matter jurisdiction where a complete remedy otherwise exists but where plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery." (internal quotation marks omitted) (quoting *Int'l Bus. Machs.*, 602 A.2d at 78)), *aff'd*, 841 A.2d 307 (TABLE) (Del. 2004).

[31] *McMahon*, 532 A.2d at 603.

contemplated therein was consummated."[32]  Where a claimant requires equitable relief alongside her declaratory judgment, this Court has jurisdiction over both claims.  On the other hand, "invoking equity in a conclusory manner to enforce a declaratory judgment is insufficient to provide jurisdiction; otherwise, any declaratory action would be endowed with spurious equitable features, which would render this Court's limited equity jurisdiction illusory."[33]  "An injunction should never issue . . . unless it is necessary for the protection of the movant's rights."[34]

It appears to me that Qlarant has an adequate remedy at law, and its requested injunction is not necessary to protect its rights.  Qlarant simply seeks an order requiring IPCL to abide by Qlarant's proposed declaratory judgment.  The declaratory judgment itself will give Qlarant full, fair, and complete relief.  If Qlarant is correct and IPCL is not a Studio stockholder, a declaration to that effect will give Qlarant the clarity it seeks and resolve the parties' dispute.[35]  Put differently, a

---

[32] Compl. at 8.

[33] *Athene*, 2019 WL 3451376, at *5 (citing *Charlotte Broad., LLC v. Davis Broad. of Atlanta LLC*, 2013 WL 1405509, at *6 (Del. Ch. Apr. 2, 2013)).

[34] *U-H Acq. Co. v. Barbo*, 1994 WL 34688, at *6 (Del. Ch. Jan. 31, 1994) (quoting *Danby v. Osteopathic Hosp. Ass'n of Del.*, 101 A.2d 308, 316 (Del. Ch. 1953), *aff'd*, 104 A.2d 903 (Del. 1954)).

[35] Qlarant has not specifically sought to enjoin the Maryland Action.  To the extent Qlarant's requested injunction preventing IPCL from asserting its stockholder status is designed to preclude IPCL from filing derivative claims as a Studio stockholder in the

favorable outcome on Qlarant's declaratory judgment claim will provide it effectively the same relief as its proposed injunction.[36] Qlarant offers no reason to infer that a declaration alone would fall short of complete relief, either in its Complaint or in its brief.[37] Qlarant's rote, conclusory "incantation of magic words sounding in equity" does not bring this declaratory judgment action within this Court's limited subject matter jurisdiction.[38]

---

Maryland Action, it has an adequate remedy there: raising IPCL's alleged lack of derivative standing as a defense. Generally, "the ability of a party to obtain the equivalent of injunctive relief by raising its contentions as a defense in an action at law[] constitutes an adequate remedy that precludes injunctive relief in equity." *Manor Healthcare Corp. v. Tolbert*, 1986 WL 5476, at *3 (Del. Ch. May 13, 1986). Qlarant may intend to use a judgment from a Delaware court to buttress that defense. The preclusive effect of a Delaware declaratory judgment will be the same whether regardless of whether it is accompanied by an inunction.

[36] *See Schlosser & Dennis, LLC v. Traders Alley, LLC*, 2017 WL 2894845, at *8 (Del. Super. July 6, 2017).

[37] *See generally* Compl.; D.I. 14.

[38] *Savage*, 920 A.2d at 408 (internal quotation marks omitted) (quoting *McMahon*, 532 A.2d at 603).

### III. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** under Rule 12(b)(1), subject to Qlarant's right to transfer the matter to Superior Court under 10 *Del. C.* § 1902. That election must be made within sixty days of this letter. If Qlarant elects to transfer this matter to Superior Court, the other issues presented by the Motion should be transferred as well.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*